IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAVID HARRIS, on behalf of himself and a class of others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ENTERPRISE RECOVERY SYSTEMS, INC., | ) ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, DAVID HARRIS, on behalf of himself and a Class of others similarly situated, and for his complaint against Defendant ENTERPRISE RECOVERY SYSTEMS, INC., ("ERS") states as follows:

**Introduction**

1.    This is an action pursuant to state and federal law, including the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*  Plaintiff seeks to recover statutorily prescribed damages from ERS due to its pattern and practice of illegal and harassing conduct in attempting to collect debts.

**Jurisdiction and Venue**

2.    This court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1332, 1367 as this case involves claims under the FDCPA, as well as related state law claims, and the Defendant is of diverse citizenship with members of the class, and the amount in controversy exceeds $5,000,000.  Venue is proper pursuant to 28 U.S.C. § 1391 as the Defendant may be found here and a substantial part of the conduct giving rise to the claims occurred here.

**Parties and Other Entities**

3.    Named Plaintiff, DAVID HARRIS, is a citizen of Illinois, residing in Chicago, Illinois.  He is a former professional debt collector with over ten years' experience in the industry, including as a Unit Manager of a debt collection company in Illinois and a debt collection law firm in Illinois.  As such, he is experienced in and knowledgeable about the rules, as well as the professional and industry standards, governing a wide range of debt collection activities.  He is also personally experienced in collecting numerous categories of debt including: credit card debt, automobile financing debt, medical debt, municipal debt and mortgages.  He has worked extensively with pre- and post-charge off collections, pre- and post-judgment collections and enforcement, purchase and contingency collections, original creditor and third party collections, and is experienced in the management of debt collection companies, collection law firms and auto-dialer systems.  He is also knowledgeable of the legal process at the administrative court, circuit court and district court levels.

4.    Defendant ENTERPRISE RECOVERY SYSTEMS, INC. is a debt collection company covering a variety of debt including, *inter alia*, educational loans for the United States Department of Education.  ERS is an Illinois corporation with its principal place of business in Westchester, Illinois.

5.    The United States Department of Education ("USDOE") is a Cabinet-level department of the United States government with its principal place of business in Washington D.C.  The primary function of the USDOE, *inter alia*, is to formulate federal funding programs involving education.  Plaintiff HARRIS is a former student who received a USDOE student loan.

2

**Facts Relating to the Named Plaintiff**

6.      On March 22, 2011, Plaintiff HARRIS received a call to his cellular telephone number at 7:25 p.m. attempting to collect a USDOE debt.  The call was placed by ERS using an automatic telephone dialing system.  Plaintiff HARRIS was not available to answer the call.  Accordingly, the machine left a voice mail message using an artificial or prerecorded voice instructing Plaintiff to return ERS's call.

7.      On March 23, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 8:14 p.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

8.    On March 28, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 7:44 p.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

9.      On March 29, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt. The machine made at least two calls: one at 1:33 p.m. and one at 6:38 p.m.  It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail after the 6:38 p.m. call.

10.    On March 30, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 2:35 p.m.

11.     On March 31, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE Debt.  The machine made at least two calls: one at 8:39 a.m. and one at 8:23 p.m.

12.     On April 1, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least four calls: one at 11:12 a.m., a second at 12:35 p.m., a third at 2:19 p.m. and a fourth at 2:22 p.m.   It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after the 11:12 a.m. and 2:19 p.m. calls.

13.      On April 4, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 7:43 p.m. and one at 7:54 p.m.  It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after both calls.

14.     On April 5, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 7:54 p.m. and one at 8:01 p.m.  It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after both calls.

15.     On April 6, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 2:55 p.m. and one at 8:08 p.m.  It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail after the 8:08 p.m. call.

16.     On April 7, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 7:43 p.m.

It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

17.　On April 11, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 7:35 p.m. and one at 7:46 p.m.  It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after both calls.

18.　On April 13, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least five calls: one at 11:11 a.m., a second at 12:30 p.m., a third at 1:16 p.m., a fourth at 6:30 p.m. and a fifth at 7:18 p.m.  It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after the 1:16 p.m. and 6:30 p.m. calls.

19.　On April 15, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least three calls: one at 9:27 a.m., a second at 9:29 a.m. and a third at 9:36 a.m.

20.　 On April 18, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 10:47 a.m.

21.　On April 19, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 1:28 p.m. and one at 1:32 p.m.

22.    On April 20, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE Debt.  The machine made at least two calls: one at 11:12 a.m. and one at 8:50 p.m.

23.    On April 22, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 11:44 a.m.

24.    On April 23, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 9:56 a.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

25.    On April 25, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 6:40 p.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

26.    On April 26, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt at 8:01 p.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail.

27.    On May 5, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt.  The machine made at least two calls: one at 1:03 p.m. and one at 7:59 p.m.  It left similar automated messages using an artificial or prerecorded voice on Plaintiff's voice mail after both calls.

28.    On May 9, 2011, ERS again called Plaintiff's cellular telephone number using the automatic telephone dialing system to attempt to collect the USDOE debt. The machine made at least two calls: one at 3:41 p.m. and one at 7:55 p.m. It left a similar automated message using an artificial or prerecorded voice on Plaintiff's voice mail after the 7:55 p.m. call.

29.    Each of the above calls was a willful and knowing violation of the TCPA's restriction on using any automatic telephone dialing system and/or an artificial or prerecorded voice to call cellular telephones. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff is entitled to the greater of the amount of his actual damages or $500 per call together, trebled, together with his costs and fees herein.

30.    ERS further violated the FDCPA's restrictions on harassment by placing more than one call per day to Plaintiff that resulted in a communication from a debt collector on April 1, 2011; on April 4, 2011; on April 5, 2011; on April 11, 2011; on April 13, 2011; and on May 5, 2011. Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to $1,000 for each of these calls, as well as the costs and fees herein.

31.    ERS further violated the FDCPA's restrictions on harassment and false or misleading representations by leaving messages on Plaintiff's voice mail without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning on March 28, 2011; on April 1, 2011; on April 11, 2011; and on May 5, 2011. Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to $1,000.00 for each of these calls, as well as the costs and fees herein.

32.    Each of the above messages also violated the Illinois' Automatic Telephone Dialers Act. Pursuant to 815 ILCS 305/30, Plaintiff is entitled to recover treble damages, together with his costs and fees herein.

33.     ERS further violated the Illinois Collection Agency Act's restrictions on harassment by placing more than one call per day to Plaintiff that resulted in a communication from a debt collector on April 1, 2011; on April 4, 2011; on April 5, 2011; on April 11, 2011; on April 13, 2011; and on May 5, 2011.  Pursuant to 225 ILCS 425/9 and Illinois common law, Plaintiff is entitled to recover actual and punitive damages.

34.     ERS further violated the Illinois Collection Agency Act's restrictions on harassment and false or misleading representations by leaving messages on Plaintiff's voice mail without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning on March 28, 2011; on April 1, 2011; on April 11, 2011; and on May 5, 2011.  Pursuant to 225 ILCS 425/9 and Illinois common law, Plaintiff is entitled to recover actual and punitive damages.

**Class Allegations**

35.     Plaintiff seeks to represent himself and a class of others similarly situated.  Plaintiff proposes that the case be organized into the following four classes.

36.     Class I consists of:

All persons who have received a debt collection telephone call deployed by Defendant ERS to his/her cellular telephone number using an automatic telephone dialing system and/or who have received a voice mail from ERS on his/her cellular telephone number generated using an artificial or prerecorded voice since May 11, 2007.

37.     The individuals in the Class I are so numerous that joinder of all members is impractical.  Named Plaintiff HARRIS estimates that Class I numbers in at least the tens of thousands because, *inter alia*,

    a.     Defendant ERS is a large national debt collection company employing approximately 500 persons.  Its client base exceeds over 250 colleges and

universities, six national and state guarantee agencies and a multitude of lenders in the Federal Family Education Loan Program. ERS' client base extends to thirty-two states across the country with delinquent or defaulted borrowers in every state. ERS has serviced more than 586,000 borrower accounts totaling more than two billion dollars. ERS utilizes an automatic telephone dialing system in order to relieve account representatives of the dialing function. On information and belief, it has collected hundreds of millions of dollars of debt in each year of the class period;

b.      A substantial portion of the debtors have cellular telephone numbers used by ERS; and,

c.      The nature of automatic telephone dialing systems and artificial or prerecorded voice messaging equipment is that they are used to contact large numbers of persons.

38.    There are questions of law and fact common to the claims of Class I. Among these common questions are:

a.      Whether ERS has a policy and practice of using automatic telephone dialing systems and/or artificial or prerecorded voice messaging equipment to call cellular telephone numbers;

b.      Whether ERS has proper procedures in place to prevent the use of automatic telephone dialing systems and/or artificial or prerecorded voice messaging equipment to call cellular telephone numbers;

c.      Whether ERS has maintained documentation of "prior express consent"; and,

     d.     Whether ERS has acted willfully or knowingly in violating the TCPA.

39.    The Named Plaintiff's claims are typical of the claims of Class I.

40.    The Named Plaintiff will fairly and adequately represent the interests of Class I. He has retained skilled counsel with experience in federal and class action litigation to represent the Class.

41.    The questions of law and fact common to Class I predominate over any individual issues.

42.    Class II consists of:

All persons who have received more than one debt collection telephone call placed by Defendant ERS to his/her cellular telephone number in a single day since May 11, 2010, and/or have received more than one voice mail from ERS on his/her telephone number in a single day since May 11, 2010 and/or have received a communication from ERS without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning since May, 11, 2010.

43.    The individuals in the Class II are so numerous that joinder of all members is impractical. Named Plaintiff HARRIS estimates that Class II numbers in at least the tens of thousands because, *inter alia*,

     a.     Defendant ERS is a large national debt collection company employing approximately 500 persons. Its client base exceeds over 250 colleges and universities, six national and state guarantee agencies and a multitude of lenders in the Federal Family Education Loan Program. ERS' client base extends to thirty-two states across the country with delinquent or defaulted borrowers in every state. ERS has serviced more than 586,000 borrower accounts totaling more than two billion dollars. ERS utilizes an automatic telephone dialing system in order to relieve account representatives of the dialing function. On information and

belief, it has collected hundreds of millions of dollars of debt in each year of the class period;

b. A substantial portion of this debt was collected by placing telephone calls placed by individuals as well as using automatic telephone dialing systems;

c. The nature of automatic telephone dialing systems is that they are used to contact large numbers of persons; and,

d. On information and belief, ERS's automatic telephone dialing systems deploy multiple calls to debtors on a single day.

44. There are questions of law and fact common to the claims of Class II. Among these common questions are:

a. Whether ERS has a policy and practice of placing multiple calls and/or leaving multiple voice mails to debtors on a single day;

b. Whether ERS has proper procedures in place to prevent placing multiple calls and/or leaving multiple voice mails to debtors in single day;

c. Whether ERS has a policy and practice of communicating with debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning;

d. Whether ERS has proper procedures in place to prevent communications to debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning;

e.   Whether it is harassing to place multiple calls and/or leave multiple voice mails in a single day to a debtor;

f.   Whether ERS has acted intentionally in placing multiple calls and/or leaving multiple voice mails per day; and,

g.   Whether ERS has acted intentionally in communicating with debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning.

45.   The Named Plaintiff's claims are typical of the claims of Class II.

46.   The named Plaintiff will fairly and adequately represent the interests of Class II. He has retained skilled counsel with experience in federal and class action litigation to represent the class.

47.   The questions of law and fact common to Class II predominate over any individual issues.

48.   Class III consists of:

All Illinois residents who have received a voice mail from Defendant ERS generated using an artificial or prerecorded voice since May 11, 2006.

49.   The individuals in Class III are so numerous that joinder of all members is impractical. Named Plaintiff HARRIS estimates that Class III numbers in at least the thousands because, *inter alia*,

a. Defendant ERS is a large national debt collection company employing approximately 500 persons. Its client base exceeds over 250 colleges and universities, six national and state guarantee agencies and a multitude of lenders in the Federal Family Education Loan Program. ERS' client base extends to thirty-two states across the country with delinquent or defaulted borrowers in every state. ERS has serviced more than 586,000 borrower accounts totaling more than two billion dollars. ERS utilizes an automatic telephone dialing system in order to relieve account representatives of the dialing function. On information and belief, it has collected hundreds of millions of dollars of debt in each year of the class period;

b. On information and belief, ERS routinely uses automatic telephone dialing systems to contact debtors and these dialers leave prerecorded messages. By their nature, automatic telephone dialing systems and messaging equipment are used to contact large numbers of persons; and,

c. On information and belief, ERS's automatic telephone dialing systems place multiple calls to debtors on a single day.

50. There are questions of law and fact common to the claims of Class III. Among these common questions are:

a. Whether ERS has a policy and practice of using prerecorded messages when calling debtors;

b. Whether ERS has proper procedures in place to prevent the use of prerecorded messages when calling debtors; and,

c. Whether ERS has acted willfully and wantonly.

51.   The Named Plaintiff's claims are typical of the claims of Class III.

52.   The Named Plaintiff will fairly and adequately represent the interests of Class III.  He
      has retained skilled counsel with experience in federal and class action litigation to
      represent the Class.

53.   The questions of law and fact common to Class III predominate over any individual
      issues.

54.   Class IV consists of:

      All Illinois residents who have received more than one debt collection telephone call
      placed by Defendant ERS to his/her telephone number in a single day since May 11,
      2006 and/or have received more than one voice mail from ERS on his/her telephone
      number in a single day since May 11, 2006 and/or have received a communication from
      ERS without disclosure of the caller's actual identity, the principal's actual identity and
      the purpose of the call and/or without a "mini-Miranda" warning since May 11, 2006.

55.   The individuals in the Class IV are so numerous that joinder of all members is
      impractical.  Named Plaintiff HARRIS estimates that Class IV numbers in at least the
      thousands because, *inter alia*,

      a.    Defendant ERS is a large national debt collection company employing
            approximately 500 persons.  Its client base exceeds over 250 colleges and
            universities, six national and state guarantee agencies and a multitude of lenders
            in the Federal Family Education Loan Program.  ERS' client base extends to thirty-
            two states across the country with delinquent or defaulted borrowers in every
            state.  ERS has serviced more than 586,000 borrower accounts totaling more than
            two billion dollars.  ERS utilizes an automatic telephone dialing system in order to
            relieve account representatives of the dialing function.  On information and

belief, it has collected hundreds of millions of dollars of debt in each year of the class period;

b.     A substantial portion of this debt was collected by placing telephone calls placed by individuals as well as using automatic telephone dialing systems;

c.     The nature of automatic telephone dialing systems and messaging equipment is that they are used to contact large numbers of persons; and,

d.     On information and belief, ERS's automatic telephone dialing systems place multiple calls and/or leave multiple voice mails to debtors on a single day.

56.     There are questions of law and fact common to the claims of Class IV.  Among these common questions are:

a.     Whether ERS has a policy and practice of placing multiple calls and/or leaving multiple voice mails to debtors on a single day;

b.     Whether ERS has proper procedures in place to prevent placing multiple calls and/or leaving multiple voice mails to debtors in a single day;

c.     Whether ERS has a policy and practice of communicating with debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning;

d.     Whether ERS has proper procedures in place to prevent communications to debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning;

       e.      Whether it is harassing to place multiple calls and/or leave multiple voice mails to a debtor in a single day;

       f.      Whether ERS has acted intentionally in placing multiple calls and/or leaving multiple voice mails per day; and,

       g.      Whether ERS has acted intentionally in communicating with debtors without disclosure of the caller's actual identity, the principal's actual identity and the purpose of the call and/or without a "mini-Miranda" warning.

57.    The Named Plaintiff's claims are typical of the claims of Class IV.

58.    The named Plaintiff will fairly and adequately represent the interests of Class IV. He has retained skilled counsel with experience in federal and class action litigation to represent the Class.

59.    The questions of law and fact common to Class IV predominate over any individual issues.

### COUNT I – Telephone Consumer Protection Act

60.    Plaintiff incorporates each and every paragraph of this complaint as if fully set forth herein.

61.    By all of the above, ERS engaged in willful and knowing violations of the TCPA's restriction on using any automatic telephone dialing system or an artificial or prerecorded voice to call cellular telephones.

62.    Plaintiff and the members of Class I were damaged as a direct and proximate result.

63.     Pursuant to 47 U.S.C. § 227(c)(5) they are entitled to the greater of the amount of
        their actual damages or $500 per call together, trebled, together with the costs and fees
        herein.

### COUNT II – Fair Debt Collection Practices Act

64.     Plaintiff incorporates each and every paragraph of this complaint as if fully set forth
        herein.

65.     By all of the above, ERS further violated the FDCPA's restrictions on harassment by
        placing more than one call per day that resulted in a communication from a debt
        collector to Plaintiff and the members of Class II.

66.     By all of the above, ERS further violated the FDCPA's restrictions on harassment and
        false or misleading representations by leaving voice mail messages without disclosure of
        the caller's actual identity, the principal's actual identity and the purpose of the call
        and/or without a "mini-Miranda" warning to Plaintiff and the members of Class II.

67.     Plaintiff and the members of Class II were damaged as a direct and proximate result.

68.     Pursuant to 15 U.S.C. § 1692k, Plaintiff and the members of Class II are entitled to
        $1,000 for each improper call to the Plaintiff, $500,000 for the members of Class II and
        the costs and fees herein.

### COUNT III – Illinois' Automatic Telephone Dialers Act

69.     Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth
        herein.

70.    By all of the above, Defendant ERS violated the Illinois' Automatic Telephone Dialers Act.  Plaintiff and the members of Class III were damaged as a direct and proximate result.  Pursuant to 815 ILCS 305/30, Plaintiff and the members of Class III are entitled to recover treble damages together with the costs and fees herein.

### COUNT IV – Illinois' Collection Agency Act

71.    Plaintiff incorporates each and every paragraph of this Complaint as if fully set forth herein.

72.    By all of the above, ERS violated the Illinois' Collection Agency Act's restrictions on harassment and false or misleading representations.  Plaintiff and the members of Class IV were damaged as a direct and proximate result.  Pursuant to 225 ILCS 425/9 and Illinois common law, Plaintiff and the members of Class IV are entitled to recover actual and punitive damages.

WHEREFORE, Plaintiff, DAVID HARRIS, demands judgment against Defendant ENTERPRISE RECOVERY SYSTEMS, INC., awarding statutorily prescribed, treble and punitive damages, as well as the costs of this action and reasonable attorneys' fees. Plaintiff further demands that the Court certify each of the four classes and establish a common fund of the statutorily prescribed, treble and punitive damages recovered, enjoin the continued violations and allow any and all other future relief to which they may appear entitled.

### Jury Demand

Plaintiff demands trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED,

/s/ Michael Kanovitz
_____
Attorneys for Plaintiff and the Class


Arthur Loevy
Michael Kanovitz
Jon Loevy
Joel Feldman
LOEVY & LOEVY
312 N. May St., Suite 100
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 fax