**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID HARRIS, on behalf of himself and<br>a class of others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.11-cv-03151 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| ENTERPRISE RECOVERY SYSTEMS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO ERS'S MOTION FOR LEAVE TO
AMEND AND TO FILE A THIRD-PARTY COMPLAINT**

Plaintiff respectfully submits this response in opposition to the motion of Defendant

Enterprise Recover Systems, Inc. ("Defendant" or "ERS") for leave to amend its answer and to

file a third-party complaint ("Motion").  In support of its opposition, Plaintiff states as follows:

**INTRODUCTION**

As has been its practice throughout this case, ERS ignored the Court's deadline for filing

motions for leave to amend.  Its belated Motion, which seeks to add two affirmative defenses that

ERS has or should have known about since this case was filed, and to file a third-party

complaint, comes too late – more than 14 months after Plaintiff filed his complaint, more than a

year after ERS answered the complaint and, most importantly, after the Court-ordered deadline

for seeking leave to amend.  (*See* Ex. 1, July 11, 2012 Tr. at 6.)

ERS's Motion does not even cite the relevant legal standard it is required to meet to

amend its answer or add a party at this stage in the case – "good cause" under Rule 16 – let alone

attempt to show that it has met that standard.  *See*, *e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715,

719 (7th Cir. 2011) (holding that "district court correctly ruled that Alioto was required to show

good cause to amend his complaint" after date set by scheduling order had passed).  As set forth

below, ERS cannot show good cause, and its motion for leave to amend should be denied.

## PROCEDURAL HISTORY

In its answer, ERS chose not to plead the affirmative defense of "consent" to allegations that it violated the TCPA. Nonetheless, almost 11 months ago, Plaintiff issued discovery requests that would have enabled the putative class to defeat a potential consent defense in the event that ERS later sought to assert such a defense.[1] ERS repeatedly failed to properly respond to those requests and others, attempting to justify its failure to respond with multiple excuses, including attorney turnover and the purported burden that collecting the requested information would require. (*See* Docket No. 46 at ¶¶ 5, 15 n.2, Motion for Rule 37 Sanctions.) Given ERS's failure to properly respond to Plaintiff's discovery requests, on April 4, 2012, Plaintiff moved to compel full and complete responses to certain discovery requests, including the consent-related discovery. (*See* Docket No. 37 at 2-5, Plaintiff's Memorandum in Support of his Motion to Compel.)

ERS missed the deadline that the Court set to respond to Plaintiff's motion to compel, and then, on the day that the Court set for ruling on the motion to compel, ERS agreed to provide all of the documents and information that Plaintiff requested in that motion. The Court entered an order memorializing the parties' agreement on the record during an April 19, 2012 status conference (the "April 19 Order"). (*See* Docket No. 40.) Pursuant to ERS's own request, the April 19 Order gave ERS 45 days – until June 5, 2012 – to provide Plaintiff with all of the documents and information requested in his motion to compel, and an additional two weeks for

---

[1] ERS similarly failed to plead the affirmative defense of "bona fide error" in response to allegations that it violated the Fair Debt Collection Practices Act ("FDCPA"). As with the potential "consent" defense, Plaintiff nonetheless issued discovery requests relating to a potential "bona fide error" defense, and the same reasons that justify denying leave to add the "consent" defense also justify denying leave to add the "bona fide error" defense.

ERS to provide Plaintiff with a privilege log.  (*Id.*)

In entering the April 19 Order, the Court's directive was clear:  "I'm okay with that just so everybody understands that 45 doesn't mean 46 or 47 because [the case] is kind of older." (Ex. 2, April 19, 2012 Tr. at 2.)  The June 5 deadline came and passed without ERS producing any additional documents or providing supplemental responses to any of the previously disputed interrogatories.  Accordingly, Plaintiff filed a Motion for Rule 37 Sanctions, arguing that ERS should be prohibited from asserting a consent defense because:  (a) it had ignored a Court order directing it to provide the consent-related discovery and had generally ignored its discovery obligations; (b) ERS's behavior was unjustified; and (c) ERS's refusal to provide consent-related discovery in a timely manner would prejudice the class, given that Plaintiff's Motion for Class Certification is due in September, and Plaintiff anticipated that additional waves of discovery might be necessary depending on what the first phase of discovery revealed.  (Docket No. 46 ¶¶ 19-22.)

ERS responded to the motion for sanctions by asserting that, at the time of its June 13 response brief, it had substantially complied with the April 19 Order.  (*See* Docket No. 48 ¶¶ 4, 6, ERS' Response to Plaintiff's Motion for Rule 37 Sanctions.)  Although the Court did not award the requested sanction, it did order ERS to pay the attorneys' fees associated with that motion, explaining that it was doing so "because I don't think it was justified for the defendant not to ask for an extension of the deadline that I had set."  (Ex. 3, June 14, 2012 Tr. at 5.)

Moreover, a review of the supplemental discovery that ERS provided after Plaintiff filed his motion for sanctions showed that ERS's representation that it had substantially complied with its obligations under the April 19 Order was not accurate, as ERS did not provide any documents or information relating to consent.

Specifically, despite agreeing to provide documents responsive to Document Requests 8 and 9 (among other "consent" related document requests), which request all documents showing consent to call any putative class member's cellular telephone and all documents supporting ERS's response to consent-related interrogatories, ERS now says that it has no such documents. (*See* Ex. 4 at 1, Defendant's Supplemental Response to Plaintiff's Document Requests.)

ERS also failed to abide by its agreement to answer a series of interrogatories relating to consent, including by: (a) identifying all debtors who did not list a cellular telephone number on their credit application, but who ERS nonetheless contacted on a cellular telephone; and (b) for each such person, identifying "specifically for each person" any evidence showing consent to receive robo-calls on their cellular telephones. (Ex. 5 at 1-2, Second Supplemental Response to Interrogatories 7, 3.) Instead of answering those interrogatories, which the April 19 Order required it to do, ERS merely produced an incomplete list of certain people ERS contacted on cellular telephones during the relevant time period (regardless of whether those people provided their number on their credit application), and then stated in conclusory terms that, despite not having or providing any evidence of consent, ERS "maintains that for all persons contacted by Defendant on their cell phones, such persons consented to be contacted on their cell phone presumably by supplying the original creditor with a cell phone number…." (*Id*. at 1, Second Supplemental Response to Interrogatory 3.)

Because ERS's supplemental discovery responses showed that it had no documents or information that would support the as yet unpled consent defense, Plaintiff moved for an order barring ERS from seeking leave to assert a consent defense, asserting that barring the consent defense was warranted because ERS had every opportunity to produce discovery to support that defense, but failed to do so, meaning either that ERS had no documents and information that

4

would support such a defense, or that ERS had simply chosen not to provide such documents and information to Plaintiff.  (Docket No. 54 ¶¶ 27-29.)

On July 11, 2012, the Court held a hearing on Plaintiff's motion to bar ERS from seeking leave to assert a consent defense, entering and continuing the motion to July 30, 2012.  During the July 11 hearing, ERS explained that it anticipated raising a consent defense in response to Plaintiff's forthcoming motion for class certification, after which the following discussion occurred:

> THE COURT: So how can you do that if you haven't pled the defense?
> MR. ANDERSON: Well, I think we would have to seek leave to plead that defense, your Honor.
> THE COURT: Why haven't you done that? Since you know that this is in the case, why haven't you done that already?
> MR. ANDERSON: Maybe we should have by now. I don't think we were required to as of today, however, but we can certainly seek leave to do that.
> THE COURT: Well, I don't know. When you say you're not required to, you know, Judge Hibbler didn't impose a deadline, and I didn't add one. But when somebody says, well, I don't have to do anything because there's no deadline, you're kind of running the risk that somebody will say you waited too long anyway.

(Ex. 1, July 11, 2012 Tr. at 4-5.)

Following that discussion, the Court set July 25, 2012 as the deadline by which the parties were required to seek leave to amend pleadings or add parties.  (*Id*. at 6.)  In setting the July 25 deadline, the Court explained that "[t]he deadline is not permission. You still have to file a motion. And so just make sure you get it on file before that, if you're going to do it."  (*Id*.)

As with the other deadlines discussed above, and despite counsel's acknowledgement that ERS would have to seek leave to amend if it wished to assert a consent defense, July 25 came and passed without ERS seeking leave to amend or seeking more time to do so.  Then, on July 27, 2012, ERS filed its Motion without even acknowledging that it was late.  ERS's continued flouting of Court orders should not be countenanced, and its motion for leave to amend should be denied.

**ARGUMENT**

The failure to abide by Court-ordered deadlines can have serious consequences, even where a party misses a deadline by only one or two days, and ERS's failure to abide by the Court's deadlines should have consequences in this case. It is one thing to seek permission in advance to extend a deadline for good cause, but quite another to simply ignore the deadline until it passes, as ERS has done here. Particularly given ERS' history in this litigation, that is an unacceptable litigation strategy, as the Seventh Circuit has explained:

> We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception. A good judge has a right to assume that deadlines will be honored.

*Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) (affirming district court's refusal to allow party to file material in support of its opposition to summary judgment one day after the deadline for filing). *See also Raymond v. Ameritech Corp.*, 442 F.3d 600, 607 (7th Cir. 2006) (affirming district court's refusal to consider summary judgment brief that was filed three days late, given that other deadlines in case, such as discovery, had already been pushed back, and excusing the three-day delay would likely have caused further delay).

Here, the consequence of ERS's decision to not comply with the Court's July 25 deadline for seeking leave to amend should be the denial of its late-filed Motion, because "[t]o amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause'" under Federal Rule of Civil Procedure 16, and ERS cannot meet that high standard. *E.g.*, *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quoting Fed. R. Civ. P. 16(b)).

**Rule 16's Good Cause Standard Precludes ERS's Motion For Leave To Amend**

The good-cause standard is more stringent than the standard for granting leave to amend

under Rule 15(a)(2), s*ee id.*, and in determining whether a party meets the good-cause standard,

"the primary consideration for district courts is the diligence of the party seeking amendment."

*See*, *e.g.*, *Alioto*, 651 F.3d at 720. A party is not diligent, and thus should not be permitted leave

to amend, where the party fails to seek leave to amend by the court-ordered deadline despite the

fact that it is, "or should have been, aware of" the basis of its proposed amendment before the

deadline. *See Trustmark Ins. Co.*, 424 F.3d at 553. That was the case in *Trustmark* and *Alioto*,

and it is the case here.

In *Trustmark*, the plaintiff conceded that it had some basis for its proposed amendment

before it even filed its complaint, but it waited until after the date in the court's scheduling order

passed before seeking leave to amend, and thus failed to show good cause. *Id.* In *Alioto*, the

plaintiff sought leave to amend in response to defendant's motion to dismiss, asserting that he

was unaware that his complaint was deficient until the defendant moved to dismiss, and that he

had shown good cause by seeking leave to amend on the last day that his response to the motion

to dismiss was due. *Alioto*, 651 F.3d at 720. The district court and the Seventh Circuit rejected

that argument, with the Seventh Circuit stating that Rule 11 required him to know whether he

had a viable complaint before filing it, and that even if he did learn that his complaint was

deficient when the defendant moved to dismiss, there was no good explanation for waiting

another two months to seek leave to amend. *Id.*; *see also Mintel Intern. Group, Ltd. v.

Neergheen*, 636 F.Supp.2d 677, 690 (N.D. Ill. 2009) (plaintiff failed to show good cause to add

spoliation claim to complaint where that issue had been in case since the outset of the case and

was "the subject of multiple motions") (internal quotation omitted).

Like the parties seeking leave to amend in *Trustmark*, *Alioto*, and *Mintel*, ERS knew

about the potential consent defense long before it sought leave to amend. Specifically, ERS has

known about the defense since at least September 2011, when Plaintiff issued his discovery requests, and the consent issue has been the subject of multiple motions since then. Moreover, as discussed above, counsel for ERS explicitly acknowledged just weeks ago that ERS would need to seek leave to amend if it wished to assert the consent defense, and the Court set a deadline for ERS to do so.

Similarly, ERS has or should have known the basis for its purported *bona fide error* defense since the start of this case, as ERS acknowledges that the defense is based on "ERS's maintenance of procedures reasonably adapted to avoid such error." (Docket No. 57 ¶ 3.) Although ERS states in a conclusory manner that it became aware of this defense during the discovery process, ERS does not explain how the discovery process alerted ERS to its own policies, or why it was justified in waiting nearly 11 months after receiving Plaintiff's discovery requests to seek leave to assert this defense. (*Id.*)

ERS also fails to show good cause with respect to its request to file a third-party complaint against one of its subcontractors. ERS offers no explanation as to why it waited so long to seek leave to file a third-party complaint against its own subcontractor. (*See* Docket No. 57 at 4-5.) Either ERS failed to adequately investigate Plaintiff's allegations in a timely manner, or ERS did adequately investigate the claims but simply failed to seek leave to add its subcontractor as a party despite believing it had a basis to do so. Either way, by failing to timely seek leave to amend, ERS did not act diligently, and it fails to show good cause. If ERS believes that a third-party may be required to indemnify ERS, it may pursue that litigation separately without slowing down this litigation by adding a new party 14 months after the case was filed.[2]

---

[2] Moreover, ERS has never mentioned this subcontractor before during this litigation, and because ERS chose not to file its proposed third-party complaint with its motion for leave to amend, Plaintiff is unable to evaluate the merits of that complaint.

Therefore, just like in *Trustmark*, *Alioto*, and *Mintel*, because ERS has failed to meet Rule 16's good-cause standard, the inquiry ends, and ERS's belated motion for leave to amend should be denied.

**ERS's Motion Also Fails Under Rule 15**

Even if the Court held that ERS satisfied the good-cause standard under Rule 16 despite ERS's decision to not even try to explain why it meets that standard, ERS's motion for leave to amend should still be denied because ERS fails to satisfy the Rule 15 standard for leave to amend. *See*, *e.g.*, *Alioto*, 651 F.3d at 720 (if court decides that moving party satisfies Rule 16, then court moves on to analyze whether that party also satisfies Rule 15). Under Rule 15, leave to amend may be denied on the grounds of undue delay, futility, or undue prejudice. *See*, *e.g.*, *Rizzo v. City of Wheaton*, 462 F. App'x 609, 612-13 (7th Cir. 2011) (affirming denial of leave to amend where party waited one year before seeking leave to amend and proposed amendment lacked merit). All three of those grounds justify denying ERS's Motion.

First, ERS's decision to wait more than a year after answering the complaint to seek leave to amend is completely unjustified, particularly given that it knew or should have known the basis for its amendment at the time of its original answer. *See id.*; *see also Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997) ("Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense."); *Justice v. Town of Blackwell*, 820 F.2d 238, 240-41 (7th Cir. 1987) (14 month delay in seeking leave to amend to assert qualified immunity defense not justified).

Second, any amendment to add a consent defense would be futile because, as set forth above and in Plaintiff's motion to bar, ERS has expressly taken the position that it has no documents or information to support such a defense; therefore, ERS would lose a motion for

summary judgment on that issue,[3] and it should not be given leave to amend to assert it. *See Estate of Porter by Nelson v. State of Ill.*, 36 F.3d 684, 690 (7th Cir. 1994) (amendment is futile if insufficient to survive motion for summary judgment), *abrogated on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002). *Cf. Balbarin vs. N. Star Capital Acquisition, LLC*, No. 10 C 1846, Minute Order at 2 (N.D. Ill. Nov. 9, 2010) ("If defendant cannot substantiate [the consent affirmative] defense with documents or information … it should say so under verification and withdraw that defense."), attached hereto as Ex. 6; *Fike v. The Bureaus, Inc.*, 09-cv-2558 (N.D. Ill. Nov. 13, 2009), Ex. 7 at 19 ("[Y]ou have an affirmative defense. Either you can withdraw your defense, I know you're not going to do that, I don't blame you, or you've got to produce evidence to support it.").

Finally, Plaintiff and the putative class would be prejudiced by allowing ERS to insert new claims and parties into this case, all of which would require additional discovery and cause additional delay. For example, consent, if allowed, would be a discovery-intensive defense, which is why Plaintiff pushed for consent-related discovery 10 months ago. If ERS has documents relating to the purported consent defense, it has not produced those documents despite ample opportunity to do so, and despite the April 19 Order requiring it to do so. With its late request for leave to amend, ERS appears to be operating under the assumption that the consent issue is starting now, from square one. That is incorrect. This is not the beginning of discovery on the issue. It is the end, with Plaintiff's motion for class certification due in September, and ERS has not come anywhere near doing what it would have been required to do

---

[3] *See, e.g., Harrison v. Dean Witter Reynolds Inc.*, 974 F.2d 873, 881 (7th Cir. 1992); *see also Wells Fargo Bank, N.A. v. Cryder*, No 11-CV-4080, 2012 WL 2502720, at *3 (N.D. Ill. 2012) ("the burden of proof on an affirmative defense lies on the one asserting that defense"); *Springfield Oil Servs., Inc. v. Mermelstein*, 914 F. Supp. 258, 264 (N.D. Ill. 1996) (granting summary judgment, over defendant's objection that plaintiff produced no evidence, because issue concerned affirmative defense for which defendant had burden of proof).

to inject the consent issue now without causing serious prejudice.

## CONCLUSION

For the reasons set forth above, ERS's decision to once again flout a Court order dooms its motion for leave to amend. ERS's motion should be denied, and the parties should finally proceed to the class certification stage of this case.

Dated:  July 29, 2012                              Respectfully submitted,

                                                   /s/ Scott R. Rauscher

                                                   Arthur Loevy
                                                   Michael Kanovitz
                                                   Jon Loevy
                                                   Scott R. Rauscher
                                                   Joel Feldman
                                                   LOEVY & LOEVY
                                                   312 N. May St., Ste. 100
                                                   Chicago, IL 60607
                                                   (312) 243-5900

## CERTIFICATE OF SERVICE

I, Scott R. Rauscher, an attorney, certify that on July 29, 2012, I caused the foregoing Response to be served on all counsel of record via CM/ECF electronic filing.


/s/ Scott R. Rauscher